UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JEFFREY WOOD,

                        Plaintiff,
                                                    **MEMORANDUM & ORDER**
                v.                                  11–CV–3560 (PKC)

NEW YORK CITY TRANSIT AUTHORITY,

                        Defendant.
----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Jeffrey Wood, proceeding *pro se*, asserts claims against Defendant New York City Transit Authority ("Transit Authority") for employment discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000–e *et seq.* (Dkt. 9.) Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth below, Defendant's motion is granted in its entirety, and Plaintiff's complaint is dismissed, with prejudice.

As an initial matter, Plaintiff has failed to comply with Local Rule 56.1 ("Rule 56.1"). Rule 56.1 requires that the parties each submit a separate statement of material facts in connection with a motion for summary judgment. *See* Local Rule 56.1(a). Where a party opposing a motion for summary judgment fails to controvert a fact properly set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted. *United States v. Kadoch*, No. 96 Civ. 4720, 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (affirming grant of summary judgment based on plaintiff's failure to submit a statement pursuant to Rule 56.1).

Ordinarily, the Court has discretion to overlook a party's failure to comply with local rules, in particular a *pro se* party's failure, and could choose instead to look to the underlying evidence submitted by the parties, or grant the non–compliant party leave to submit a 56.1 Statement. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). However, the Court finds no good cause to do so here. There is no indication that Plaintiff has undertaken any effort to conduct meaningful discovery, such as depositions. (*See* Dkt. 38.) Because Plaintiff has made no effort to conduct discovery in this action, allowing him additional opportunity to submit a Rule 56.1 Statement would not be productive. Accordingly, because the Court finds no good cause for Plaintiff's failure to comply with Rule 56.1, it deems admitted all of the facts set forth in Defendant's 56.1 Statement ("Def. 56.1"). (Dkt. 40.)

*BACKGROUND*

The following facts from Defendant's 56.1 Statement are relevant to the resolution of the present motion.

## I.     <u>The Parties</u>

The Transit Authority is a public benefit corporation created by the New York State Legislature (Public Authorities Law ("PAL") § 1201 *et seq.*) for the purpose of maintaining and operating transit facilities in New York City for the "convenience and safety of the public" and, in so doing, "shall be regarded as performing a governmental function." PAL § 1202(1)–(2). The Transit Authority is also empowered to "do all things necessary or convenient to carry out its purposes and for the exercise of the powers granted in this [PAL §§ 1200–122]." PAL § 1204(17). (Def. 56.1 ¶ 1.) Pursuant to PAL § 1210(2), "appointment, promotion and continuance of employment of all employees of the [Transit Authority] shall be governed by the

provisions of the civil service law and the rules of the municipal civil service commission of the city." (*Id.* ¶ 2.)

Plaintiff is currently employed as a bus operator by the Transit Authority's Department of Buses ("DOB"), Queens Division. (*Id.* ¶ 3.) He was originally hired as a bus operator by the Transit Authority's DOB on or about August 5, 1996, in the Brooklyn Division, and in or about January 1997, requested and received a transfer to the Queens Division. (*Id.*)

## II. Plaintiff's June 24, 2006 Accident ("2006 Accident")

On June 24, 2006, Wood was involved in an accident while on duty driving his Transit Authority bus. (*Id.* ¶ 4.) According to the supervisor on the scene, and Wood's own account, Wood's bus was struck at an intersection by a car coming from the bus's left side on the cross street. (*Id.*) The car hit the left side of the bus, causing the bus to veer out of its lane, mount the sidewalk, and collide with a house, where it finally stopped. (*Id.*) Several people, including Plaintiff, were injured and taken to the hospital. (*Id.*)

The Safety and Training Division of the Transit Authority's DOB conducted an investigation into this accident, as did the Transit Authority's Office of System Safety ("OSS"). (*Id.* ¶ 5.) Both divisions issued reports, dated July 24, 2006, with their respective findings. (*Id.*)

The DOB found that the 2006 Accident was a "major preventable" accident, because Wood "failed to drive defensively when approaching the intersection", and that his "excessive speed" in rainy and wet conditions caused him to lose control of the bus. (*Id.* ¶ 6.) The report also stated that Wood "failed to properly cover the brakes . . . and apply the appropriate skills/techniques to avoid contact." (*Id.*) The OSS similarly found that a contributing factor to the collision was that Wood "operated the bus above the speed limit, and in a manner not consistent with [the Transit Authority's] defensive driver training." (*Id.*)

On September 7, 2006, the Transit Authority brought disciplinary charges against Plaintiff with a recommended penalty of dismissal due to the egregious nature of the accident. (*Id.* ¶ 7.) The Disciplinary Action Notification ("DAN") stated that the 2006 Accident was deemed a "major preventable" accident, and that the investigations of both OSS and DOB found that Wood "was operating his bus above [the] speed limit [of] 40 MPH in [a] thirty MPH zone, not consistent with NYC Transit defensive driver training for entering an intersection with wet pavement. . . . Major structural damage was sustained to both the bus and house . . . [and the] bus was scrapped . . . .[Wood's] actions constitute gross misconduct and incompetence." (*Id.*)

On September 22, 2006, a Step 1 meeting of the disciplinary grievance procedure was held and the penalty of dismissal from service was affirmed. (*Id.* ¶ 8.) Wood appealed this decision. (*Id.*) On November 21, 2006, Plaintiff, with his union representative, entered into a Stipulation and Agreement ("Agreement"), wherein Wood was given a thirty–day suspension for the 2006 Accident in lieu of dismissal. (*Id.* ¶ 9.)

## III. <u>The Promotion Process for Transit Authority Dispatcher</u>

To be eligible for the position of Transit Authority Dispatcher ("Dispatcher")[1], a candidate must pass a civil service examination. (*Id.* ¶ 11.) If the candidate passes the examination, he/she is placed on a list that ranks candidates in order of their performance on the examination. (*Id.*) The race of the candidate is not indicated on the list. (*Id.*) Getting on the list does not guarantee appointment to the Dispatcher position. (*Id.* ¶ 12.)

The Transit Authority's Division of Human Resources ("HR") sends the list of passing candidates to the appropriate DOB representatives, and requests the evaluation of each candidate's work performance for the previous three years. (*Id.* ¶ 14.) The evaluation process utilizes the "Dispatcher Selection Criteria" as outlined in a September 2002 memorandum from

---

[1] The Dispatcher position is a promotion from the position of bus operator.

the Chief Transportation Officer ("CTO") of the Transit Authority.  (Ex. B to Smith Decl.[2])  The Transit Authority's DOB evaluates each candidate using the Dispatcher Selection Criteria and then submits a list to HR identifying the candidates that are recommended for promotion, as well as those candidates that are not recommended, along with the reason(s) for their non–selection. (Smith Decl. ¶ 15.)

An unsatisfactory or unsuitable candidate may be passed over for promotion through the use of the "one–in–three rule," which states that "[a]ppointment and promotion from an established eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified . . . as standing highest on such established list who are qualified and willing to accept such appointment and promotion."  Personnel Rules and Regulations of the City of New York, § 4.7.1(c).  This rule requires the Transit Authority to select at least one candidate from a group of three remaining candidates scoring highest on the civil service list.  (*Id.*)

The one–in–three rule works as follows: each candidate's name is compared against two others in the order that their names appear on the list, forming a group of three from which at least one candidate must be selected.[3]  (Smith Decl. ¶ 9.)  If a candidate is considered  but not selected from that group of three, that candidate is considered again for the next opening in the next group of three from which one candidate is selected.  (Def. 56.1 ¶ 15.)  If the same

---

[2] Citations to "Smith Decl." refer to Patrick Smith's Declaration in Support of Defendant's Motion for Summary Judgment.  (Dkt. 44.)

[3] In certain instances, in order to satisfy the one–in–three rule, a candidate that would not have otherwise been selected based on his/her employment history, criminal record or other considerations, will be hired if he/she is the "best" of the three being considered.   (Def. 56.1 ¶ 13.)

candidate is not selected, the candidate is considered again for the next opening in a third, and final, group of three from which one must be selected.  (*Id.*)

For example, the first of three names are considered numbers 1, 2, and 3.  (Smith Decl. ¶ 9.)  If number 1 is selected, but numbers 2 and 3 are not, the next group would be 2, 3, and 4.  (*Id.*)  If number 3 is selected the next time, numbers 2, 4, and 5 are considered as a group.  (*Id.*)  If 4 or 5 is selected the time after that, then number 2 will no longer be considered, and number 2's name is removed from the list as being passed over.  (*Id.*)  If a candidate is removed from the list, he/she is not considered again pursuant to the Civil Service Law and the Personnel Rules and Regulations of the City of New York.  (*Id.* ¶ 10.)  However, a removed candidate may request that his/her name be restored to the list for future consideration, and the Transit Authority decides whether to consent to the name being restored.  (*Id.*)

As part of its "one–in–three" review of the list, HR determines whether there is a "cluster" that needs to be "busted" (*i.e.,* a "cluster" that is formed when 3 non–recommended persons are considered together, allowing a non–recommended person to be selected).  (Def. 56.1 ¶ 16.)  HR also ensures that each non–recommended candidate is given three considerations as required.  (*Id.*)  In the event a non–recommended person must be selected to "bust" the "cluster," HR requests that the DOB conduct a further review of the work performance of the three candidates in the "cluster," and render a determination.  (*Id.*)

## IV.    Plaintiff's Civil Service Exam

In May 2008, Plaintiff passed the promotional exam, Exam No. 8512, for the title of Dispatcher.  (*Id.* ¶ 17.)  He was ranked number 78 out of 1,021 eligible candidates.  (*Id.* ¶ 18.)

Wood was considered for the first time with numbers 76 and 77. (*Id.*)[4] Number 76, who self–identifies as Hispanic on Transit Authority records, was selected for appointment. (*Id.*) Number 76 had a clear employment history and clean driving record.

Wood was considered next with numbers 77 (again) and 80. (*Id.* ¶ 19.) Number 77, who did not identify his race in his application, was originally not recommended for promotion, but then, was selected for appointment as the "cluster buster" where his poor attendance, coupled with his employment history, was considered more acceptable than Wood, with his prior thirty–day suspension, and number 80, who also had a poor attendance record. (*Id.*) Wood was next grouped with numbers 80 (again) and 81 from the eligible list. (*Id.* ¶ 20.) Number 81, who self–identifies as Hispanic on Transit Authority records, was selected for promotion. (*Id.*) Number 81 had a clear employment history and clean driving record. (*Id.*)

Wood was considered but not selected three separate times, and each time he was not considered to be the best candidate for the position, due to the thirty–day suspension in his work history for the major preventable accident that occurred on June 24, 2006 when he was driving a bus. (*Id.* ¶ 21.) On or about December 3, 2010, Wood was informed that he had been considered, but not selected, for promotion to the Dispatcher position. (*Id.* ¶ 22.) By email dated December 12, 2010, Wood requested to have his name restored to the promotion list for Dispatcher. (*Id.* ¶ 23.) Wood's request was denied, as discussed *infra*.

## V.    Plaintiff's Complaint with the Equal Employment Opportunity Commission ("EEOC")

On or about February 20, 2011, Wood completed an Intake Questionnaire with the EEOC. (*Id.* ¶ 24.) The Transit Authority received a "Notice of Charge of Discrimination" from

---

[4] Wood was not recommended by the DOB because of his thirty–day suspension stemming from the June 2006 accident. Ex. B. to Joseph D'Auria's Declaration in Support of Defendant's Motion for Summary Judgment ("D'Auria Decl."), filed 3/20/14. (Dkt. 43.)

the EEOC, dated March 1, 2011, in relation to EEOC Charge No. 846–2011–32462, regarding Wood, with no further supporting documentation. (*Id.*) On April 25, 2011, the Transit Authority received a "Dismissal and Notice of Rights" letter from the EEOC in regard to this charge. (*Id.*)[5]

## VI.   Correspondence between the Transit Authority and Plaintiff

By letter dated June 1, 2011, the DOB's Senior Vice President, Darryl Irick, wrote to Wood's union, explaining that while Wood was "considered for the position of Dispatcher in December 2010 . . . [his thirty–day] suspension disqualifies Mr. Woods [sic] for a period of ten years." (*Id.* ¶ 25.) Irick further wrote, "Once the ten–year period has passed, the depot can generate a new three–year evaluation for review." (*Id.*)

On July 23, 2011, Wood wrote to the Transit Authority's Vice President of Labor Relations, Christopher Johnson, claiming "there were motives for not restoring [his] name back on the eligible list." (*Id.* ¶ 26.) By letter dated August 2, 2011, Christopher Johnson responded to Wood, stating that if Wood felt he had been subjected to unlawful treatment and retaliation, he should contact the Transit Authority's Office of Equal Employment Opportunity. (*Id.* ¶ 27.)

## *SUMMARY JUDGMENT STANDARD*

The standard for summary judgment is well established. Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010); *see Salahuddin v. Goord*,

---

[5] By letter dated October 1, 2012, the EEOC informed the Transit Authority that they did not have a copy of the closed investigative file on the charge because the records were destroyed in a flood at their New York office. (Def. 56.1 ¶ 24.)

467 F.3d 263, 272–73 (2d Cir. 2006), after which the burden shifts to the non–moving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The non–moving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 167 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the [non–movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non–movant]." *Anderson*, 477 U.S. at 247; *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). The non–moving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

The Second Circuit has provided additional guidance with respect to motions for summary judgment in employment discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact," *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), and "may be appropriate even in the fact–intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact–intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Lastly, the Court is mindful of its obligation to construe *pro se* pleadings and submissions "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

## DISCUSSION

## I.   <u>Procedural Defects in Plaintiff's Claims</u>

As a preliminary matter, the Transit Authority argues that incidents of alleged discrimination that occurred earlier than three hundred days before the filing of the EEOC

complaint are untimely.[6]  (Def. Mem.[7] at 7.)  Accordingly, Defendant claims that since the EEOC complaint was filed on February 20, 2011, no aspect of its alleged mistreatment of Wood in connection with the 2006 Accident may be sued on under Title VII.  (*Id.*)  Defendant is correct that Plaintiff's claim that his thirty–day suspension was "continuous harassment of discriminatory acts by the defendants" is time–barred, as the suspension occurred outside the three hundred day limitation.  (Ex. A to Pl. Opp.[8] at 14.)  However, Plaintiff's discrimination and retaliation claims stemming from the Transit Authority's denial of his promotion in December 2010 occurred within three hundred days from when the EEOC complaint was filed, and are thus timely.

Defendant also claims that to the extent that Wood asserts any constitutionally–based claims relating to the Transit Authority's handling of the 2006 accident, these claims are subject to a three–year limitations period.  (Def. Mem. at 7–8); *see Walters v. City Dep't of Correction*, 517 F. App'x 41, 42 (2d Cir. 2013).  Defendant alleges that because this lawsuit was commenced on July 25, 2011, any constitutionally–based claims occurring before July 25, 2008, and thus all of Plaintiff's claims challenging the Transit Authority's handling of his 2006 accident, including the discipline imposed on him, are untimely.  (Def. Mem. at 7–8.)  Defendant is correct that any constitutionally–based claim made by Plaintiff relating to the 2006 accident violates the three–year limitations period.  (*Id.*)  However, Plaintiff's constitutional claims relating to the Transit Authority's denial of his promotion in December 2010 are not time–barred.

---

[6] Title VII requires that a charge of discrimination be made to the EEOC or the equivalent state agency, "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1).

[7] Citations to "Def. Mem." refer to Defendant's Memorandum of Law In Support of Defendant's Motion for Summary Judgment, filed 3/27/14.  (Dkt. 45.)

[8] Citations to "Pl. Opp." refer to Plaintiff's Affirmation in Opposition to Defendant's Motion for Summary Judgment, filed 5/1/14.  (Dkt. 47.)

## II.     Employment Discrimination Claims

The manner of proving employment discrimination and retaliation claims, including claims under the ADA and Title VII are governed by the burden–shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–805 (1973) (Powell, J.).  *See id.* (adopting the framework for Title VII claims); *Sista v. CDC his N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (adopting framework for ADA claims); *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) ("In analyzing a discriminatory discharge claim under the ADA, we apply the burden–shifting analysis established by the Supreme Court in *McDonnell Douglas*. . . ."); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden–shifting approach of *McDonnell Douglas* . . .").

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination.  *See Tex. Dep't of Cmty. Affairs v. Burdine* ("*Burdine*"), 450 U.S. 248, 252–53 (1981) (Powell, J.) (plaintiff bears entire burden of proving, by a preponderance of the evidence, that he has a *prima facie* case of employment discrimination.).  This burden, however, is "not onerous," *Burdine*, 450 U.S. at 253, and is "minimal," at best, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (Scalia, J.).

Once a *prima facie* case has been proved, the burden of producing evidence, but not persuading the jury, shifts to the defendants, and the defendants are required to articulate "some *legitimate, nondiscriminatory reason*" for their adverse employment decision.  *Burdine*, 450 U.S. at 253 (emphasis added; quotations omitted).  The burden of persuasion, however, "remains at all times with the plaintiff."  *Id.*  In other words, even though the defendants' burden is to produce evidence of their nondiscriminatory reasons, such evidence is not subject to attack by way of a

"credibility assessment."  *St. Mary's Honor Ctr.*, 509 U.S. at 509; *see also Burdine*, 450 U.S. at 254 ("The defendant need not persuade the court that it was actually motivated by the proffered reasons.").

Should the defendants satisfy their burden of production, the "presumption" of employment discrimination created by the plaintiff's *prima facie* case is rebutted.  *Burdine*, 450 U.S. at 253, 255–56; *see also St. Mary's Honor Ctr.*, 509 U.S. at 506–507 (describing the "presumption" as a "conclusion [of employment discrimination] in the absence of explanation," which the defendants' "explanation" rebuts).  At the third and final step of the *McDonnell Douglas* framework, the plaintiff must bear the entire burden of proving that the defendants' nondiscriminatory reasons were mere "*pretext* for discrimination," thus establishing that [he] was, in fact, discriminated against.  *Burdine*, 450 U.S. at 253, 256 (emphasis added).

### A.  Title VII Discrimination Claims

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1).  Plaintiff alleges the following discrimination claims under Title VII:  (1) failure to promote; (2) unequal terms and conditions of employment; and (3) retaliation.  The Court examines each claim below.

#### 1.  Failure to Promote

To establish a *prima facie* Title VII claim for failure to promote, an employee must allege that: (1) he is a member of a protected class; (2) he is qualified for the job to which he or she applied; (3) he was denied the promotion or transfer; and (4) the denial occurred under circumstances giving rise to an inference of discrimination.  *Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 328 (E.D.N.Y. 2002).

The Court finds that Plaintiff makes out a *prima facie* case under the *McDonnell Douglas* framework. He (1) is African American; (2) applied for a promotion to the position of Dispatcher; (3) was not hired to be the Dispatcher; and (4) was qualified for the position for which a non–African American was hired. *See Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) ("the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis.").

In response, Defendant has produced evidence that the reason for denying Plaintiff's promotion was because he was not viewed as the best candidate in any one of the three groups considered. (Def. Mem. at 10–11.) As discussed *supra*, candidate number 76 had a clean driving record and no disciplinary suspensions in his record, as opposed to Plaintiff's thirty–day suspension relating to a "major preventable" accident. (Ex. E to D'Auria Decl.) Number 77, was selected as the "cluster buster", where his poor attendance was considered preferable to Wood's record. (*Id.* at Ex. F.) Number 81 was selected for promotion over Wood because number 81 had a clear employment history and driving record. (*Id.* at Ex. H.) The record establishes that (1) Plaintiff had a poor employment history, specifically the "major preventable" accident that constituted "gross misconduct and incompetence", and (2) the candidates considered alongside Plaintiff had driving and/or disciplinary records superior to Plaintiff's.[9] (Def. 56.1 ¶ 7.) Accordingly, Defendant has put forth a legitimate, non–discriminatory reason for Plaintiff's non–promotion. *Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 495

---

[9] The Court notes that Plaintiff was considered with number 80, who did not identify his race in his application, in both the second and third grouping. Number 80 was also was not promoted. His employment record indicates that he had poor attendance. He was also cited for one accident and two other incidents, but only received a warning for each incident. (Ex. G to D'Auria Decl.)

(S.D.N.Y. 2013) (finding that the defendants set out legitimate, nondiscriminatory reasons for refusing to promote plaintiff due to poor performance); *Shan v. New York City Dep't of Health & Mental Hygiene*, No. 05 Civ. 3245, 2007 WL 2746891, at *6 (S.D.N.Y. Sept. 19, 2007), *aff'd*, 316 F. App'x 23 (2d Cir. 2009) (same).

In arguing that the Defendant's proffered nondiscriminatory reason for not promoting him is pretextual, Plaintiff claims that Defendant has implemented policies favoring non–African Americans over African Americans. However, Plaintiff offers no affidavits, deposition testimony, or other evidence[10] to demonstrate that he was not promoted due to his race and/or color, aside from the fact that he is African–American and some of the successful candidates were not African–American. Nor does he offer anything beyond these conclusory allegations about the Transit Authority's purportedly bias policies. Plaintiff's unsupported allegations "do not create a material issue of fact." *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000); *Smith v. American Express Co.*, 853 F.2d 151, 154 (2d Cir. 1988) (affirming summary judgment where plaintiff failed to rebut employer's justifications through specific facts contained in affidavits, deposition testimony or other admissible evidence). In fact, of the 151 candidates promoted from the list, 57 identified as Black – more than any other racial category.[11] Because Plaintiff has failed to put forward evidence upon which a reasonable trier of fact could find that

---

[10] For example, in the EEOC Intake Questionnaire, Plaintiff names two individuals as witnesses to the alleged discriminatory incidents. (Dkt. 9–2.) Plaintiff could have deposed these individuals, or submitted affidavits from them, to support his allegations. The fact that Plaintiff does not provide any witness testimony, and does not even mention these witnesses in his briefing, further weakens his discrimination claim.

[11] Of the 151 candidates that were promoted to dispatcher, 57 identified as Black, 35 identified as White, 41 identified as Hispanic, 17 identified as Asian, and 1 did not identify his/her race. (Smith Decl. ¶ 28.)

Defendant's legitimate, nondiscriminatory reason for denying Plaintiff's promotion is pretextual, Defendant's motion for summary judgment on Plaintiff's failure–to–promote claim is granted.

### 2. **Unequal Terms and Conditions of Employment Claim**

Plaintiff claims that he was subjected to unequal terms and conditions of employment. (Am. Compl. p. 3.[12]) To establish this claim, Plaintiff must show that there were other similarly situated employees, outside of the protected class, who engaged in conduct substantially similar to that of plaintiff, but received preferential treatment.[13] *Vanhorne v. New York City Transit Auth.*, 273 F. Supp. 2d 209, 216 (E.D.N.Y. 2003).

Wood alleges that two individuals ("John Doe 1" and "John Doe 2"), Candidate #18[14], Candidate #58, and Candidate #74 are Transit Authority employees who are outside of his protected class, and were promoted to Dispatcher despite having safety citations and/or suspensions in their record.[15] (Am. Compl. ¶¶ 76–79.) Plaintiff argues that "*excluding Plaintiff*

---

[12] Plaintiff's Amended Complaint is comprised of a standard 5–page form that contains his identifying information as well as the basis of his claim. Any citation to the first five pages will be identified by the page number. Plaintiff then discusses the nature of the claims and the causes of action in paragraph form. Any citation to the second part of the Amended Complaint will be referred to by the paragraph number. (Dkt. 9.)

[13] Plaintiff does not suggest any comparators to support a claim that similarly situated employees, outside of his protected class, received preferential treatment by having their names restored to the promotion eligibility list after being denied a promotion.

[14] Plaintiff named John Does 1 and 2 as comparators in his Amended Complaint. (Dkt. 9.) Plaintiff identified other potential comparators during discovery, after reviewing the list of individuals who were promoted during the same period he was denied promotion. (Exs. A, H to Pl. Opp.) The names of these individuals were redacted on the records, and instead, they were identified by their numerical ranking on the list. (Ex. H to Pl. Opp.) The race of the candidates was provided by the Transit Authority because the list of eligible candidates for promotion does not indicate race. (*Id.*)

[15] In Plaintiff's responses to Defendant's second set of interrogatories, he includes a chart that appears to refer to three additional potential comparators. They are labelled as follows: "B comparator", "#63 Comparator", and "#72 Comparator." (Ex. A to Pl. Opp. at 8–10.) Plaintiff

*[sic] thirty–day suspension*,[16] his record was similar to almost all of the 'selected' Non–African candidates."  (Ex. A at 14 to Pl. Opp. (emphasis added).)

### a.  **John Doe 1**

John Doe 1, who self–identifies as Native American on Transit Authority records, was promoted to Dispatcher in 2007.  (Smith Decl. ¶ 23.)  According to John Doe 1's employment history, he was suspended for twenty days for falsifying records.   (Ex. H to Smith Decl.) However, Plaintiff cannot be considered a similarly situated employee to John Doe 1 because John Doe 1's suspension was imposed in 1999, when the Dispatcher Selection Criteria only required a three–year history review period, as opposed to the ten–year review period in effect in 2006 when Plaintiff was suspended.[17]   Therefore, John Doe 1's 1999 suspension was not considered when the Transit Authority reviewed him for a promotion in 2007.  Accordingly, John Doe 1 cannot be considered a similarly situated employee to Plaintiff because the criteria

---

does not provide any information relating to "B Comparator".  "#63 Comparator" was not promoted, and thus, is not relevant to the analysis here.  "#72 Comparator" is not outside Plaintiff's protected class and thus cannot be a comparator.  In the EEOC Intake Questionnaire, Plaintiff also names four other alleged comparators.  (Dkt. 9–2 at 11.)  However, there is no indication that these four individuals are outside of Plaintiff's protected class.  Furthermore, Plaintiff merely provides hearsay evidence to support his argument that these four individuals are similarly situated to him, and thus, the Court will not consider these individuals as potential comparators.

[16] Clearly, in analyzing Plaintiff's alleged comparators, the Court cannot ignore Plaintiff's thirty–day suspension.

[17] The Dispatcher Selection Criteria were amended in 2002 to require a ten–year history review for any serious violations.  However, John Doe entered a disciplinary agreement for his suspension in 1999, before the criteria was amended, and thus was only subject to a three–year review period. (Smith Decl. ¶ 23.)

used in John Doe 1's promotion substantially differed from the standard applied to Plaintiff's promotion decision.[18]

### b.  <u>John Doe 2</u>

John Doe 2, who self–identifies as Hispanic on Transit Authority records, was promoted to Dispatcher in 2000.  (Smith Decl. ¶ 24.)  John Doe 2 had a one–day suspension in his record from 1996.[19]  (Ex. I to Smith Decl.)  Plaintiff's attempt to compare himself to John Doe 2 is also unavailing because Plaintiff's employment record, which included a thirty–day suspension due to a "major preventable" accident, is materially worse than John Doe 2's operating record, which only contained a one–day suspension.  Therefore, Plaintiff and John Doe 2 are not "substantially similar" for purposes of this claim.  *See Tomasino v. Mount Sinai Medical Center and Hospital*, No. 97 Civ. 5252, 2003 WL 1193726, at *14 (S.D.N.Y. March 13, 2003) (granting summary judgment where none of the other nurses identified by plaintiff as "similarly situated" had committed infractions as serious as plaintiff's).

### c.  <u>Candidate #18</u>

Candidate #18 on the eligibility list is a White individual, who was promoted to Dispatcher in 2010.   (Ex. H to Pl. Opp. at D–1027; D–1074.)  Candidate #18's employment record for the past three years indicates that he/she was cited for four safety violations: (1) a non–preventable accident in 2007 where a truck hit Candidate #18's bus; (2) Candidate # 18's bus being struck by another bus at bus stop in 2007; (3) a truck striking the left rear–view mirror

---

[18]  Furthermore, John Doe 1's suspension was much more distant in time than Plaintiff's at the time of their requested promotions (eight versus five years), and a third shorter (twenty versus thirty days), thereby rendering John Doe 1 an inapt comparator.

[19]  John Doe 2's one–day suspension would have not have been considered by the DOB under either the pre– or post–amended Dispatcher Selection criteria because it was not a "serious violation," and it was over three years old at the time John Doe 2 was promoted.

of Candidate #18's bus in 2008; and (4) Candidate #18 returning to his/her bus and finding the left–side rear mirror broken in 2009. (*Id.* at D–1074.) Candidate #18 did not have any suspensions. (*Id.*) Although Candidate #18 may have had more safety violations than Plaintiff, his/her citations were minor compared to Plaintiff's serious violation that involved "gross misconduct and incompetence." (Def. 56.1 ¶ 7.) In addition, unlike Plaintiff, Candidate #18 was not suspended for these violations. Therefore, Candidate #18 and Plaintiff are not sufficiently similar for purposes of this claim.

### d. **Candidate #58**

Candidate #58 is a Hispanic individual who was promoted to Dispatcher in 2011. (Ex. H to Pl. Opp at D–1028; 1163–1164.) Candidate #58's employment record for the past three years indicates that he/she was cited for 3 preventable collisions, two of which were considered "not major."[20] Unlike Plaintiff, Candidate #58 had no suspensions, and thus is not similarly situated to Plaintiff.

### e. **Candidate #74**

Candidate #74 is a Hispanic individual who was promoted to Dispatcher in 2009. (Ex. H to Pl. Opp at D–1773(A); 1785–87.) Candidate #74 was initially not recommended due to unacceptable attendance. (*Id.*) However, he was approved for a promotion after twelve months of improved attendance and overall performance. (*Id.*) Unlike Plaintiff, Candidate #74 was never involved in an accident and received no suspensions. (*Id.*) Therefore, Candidate #74 is not similarly situated to Plaintiff.

In sum, Plaintiff fails to identify any similarly situated employee, outside of his protected class, that was afforded preferential treatment or otherwise adduce any evidence in support of his

---

[20] Candidate #58 was involved one accident per year from 2008–2010, for a total of three accidents. (Ex. H to Pl. Opp at D–1773(A); D–1785–87.)

claim. None of the candidates he cites had a thirty–day disciplinary suspension or "major preventable" accident in their record, and was subject to the ten year look–back review established in 2002. Accordingly, the Court finds that Plaintiff has failed to meet his *prima facie* burden, and summary judgment is granted with respect to his claim for unequal terms and conditions of employment.

### 3. **Retaliation Claim[21]**

Plaintiff argues that the Defendant retaliated against him by denying him a chance to be restored to the certified eligible list for promotion because he (1) filed an EEOC charge; and (2) filed a Workers' Compensation claim.[22]

To establish a *prima facie* case of retaliation, plaintiff must show (1) that he participated in a protected activity known to the defendant; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2008).

Here, it is undisputed that Plaintiff engaged in a protected activity by filing a charge with the EEOC, and that he suffered an adverse employment action when he was not promoted. However, based on the undisputed evidence in this case, Plaintiff cannot establish a causal connection between the protected activity and the denial of his request to be restored to the eligibility list. Defendant's denial of Plaintiff's December 2010 request preceded the February

---

[21] Plaintiff also argues that he was subject to "retaliation or coercion" by Defendants who allegedly "discriminat[ed] against Plaintiff for opposing [Defendant's] unlawful acts, and intimidating him into signing a 'Stipulation and Agreement' on 11/21/2006." (Am. Compl. ¶ 88.) As discussed *supra*, any claims relating to the June 2006 accident are time–barred, and are dismissed.

[22] Plaintiff does not argue that he was retaliated against when he was denied the promotion. (Am. Compl. ¶¶ 86–95.)

2011 EEOC complaint, undermining any claim that Plaintiff was retaliated against because of the protected activity. *Benjamin v. Health & Hospitals Corp.*, No. 07 Civ. 2487, 2009 WL 2959622, at *11 (E.D.N.Y. Sept. 11, 2009), *aff'd*, 394 F. App'x 829 (2d Cir. 2010) ("As a matter of law, there is no causal relationship between protected activity that occurs after a materially adverse event.").

Plaintiff also claims that he was retaliated against after filing a Workers' Compensation claim for the 2006 Accident. However, the state's Workers' Compensation Law is Plaintiff's exclusive remedy for his claim that his employer retaliated against him for filing a Workers' Compensation. *See De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 646 (S.D.N.Y. 2011) ("The Workers' Compensation Law . . . provides the exclusive remedy for an employee's claim that his employer discriminated or retaliated against him for filing, or attempting to file, a workers' compensation claim."); *Agard v. New York State Dep't of Taxation & Fin.*, No. 10 Civ. 4726, 2012 WL 601474, at *5 (E.D.N.Y. Feb. 23, 2012) ("Plaintiff's activity here was protected *exclusively* by the Workers' Compensation Law, and not by Title VII.") (emphasis in original). Accordingly, summary judgment is granted to Defendant on Plaintiff's retaliation claim.

**B. ADA Claim**

Plaintiff alleges that he was discriminated against by Defendant, in violation of the ADA, on the basis of an alleged disability relating to "partial permanent disability in right shoulder 30% lose [sic] of use." (Am. Compl. at p. 3.) [23]

---

[23] Plaintiff also appears to allege that the Transit Authority "discriminated" against him in violation of the ADA because he made a Workers' Compensation claim. (Am. Compl. ¶¶ 50–55.) The Court construes this claim as alleging retaliation, which, as discussed, is not cognizable. *See supra* at 21.

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability . . ." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004) (citing *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003)); *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

Under the ADA, the term "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more of an individual's major life activities; (B) a record of such impairment; or (C) being regarded as having such impairment. 42 U.S.C. § 12102(2). Plaintiff claims that he is disabled within the meaning of the ADA, but fails to demonstrate that his alleged physical impairment substantially limits a major life activity, as the statute requires. Plaintiff presents no medical records regarding the alleged impairment, though he did receive Workers' Compensation for his injury, which establishes that he was injured. Plaintiff also provides no evidence that he was viewed as having an impairment, as defined by the ADA. Even assuming *arguendo* that Plaintiff could establish that he has a disability under the ADA, he does not present any evidence that he suffered an adverse employment action due to this impairment. To the extent Plaintiff is claiming that he was not promoted to the Dispatcher position because of his alleged disability, he does not offer even a scintilla of evidence supporting such a link. *Anderson*, 477 U.S. at 247 ("The mere existence of a scintilla of evidence in support of the [non–movant's] position will be insufficient; there must be evidence

on which the jury could reasonably find for the [non–movant].").  Accordingly, Plaintiff has failed to make out a *prima facie* case of discrimination under the ADA.

Lastly, Plaintiff's claim that Defendant violated the ADA by "refus[ing] timely payments for the Plaintiff while he was on Workers' Compensation, and forc[ing] him to use his sick time" (Am. Compl. ¶¶ 46–47) is without merit.  Such claims are not covered by the ADA.  Instead, as discussed *supra*, the exclusive remedy for claims relating to the payment of Workers' Compensation benefits is the state's Workers' Compensation Law.  Accordingly, summary judgment is granted to Defendant on Plaintiff's ADA claims.

### CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. Plaintiff's complaint is dismissed in its entirety, with prejudice, and the Clerk of the Court is respectfully directed to terminate this matter.


SO ORDERED:


   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: March 30, 2015
       Brooklyn, New York